UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

ADRIATIK SPAHIU,

           Plaintiff,

vs.                                        Case No.  3:11-cv-1138-J-MCR

CAROLYN W. COLVIN,[1]
Acting Commissioner of Social Security,

           Defendant.
_____/

## MEMORANDUM OPINION AND ORDER[2]

**THIS CAUSE** is before the Court on Plaintiff's appeal of an administrative decision denying his application for Social Security benefits.  The Court has reviewed the record, the briefs, and the applicable law.  For the reasons set forth herein, the Commissioner's decision is **REVERSED** and the case is remanded for further proceedings.

## I.  PROCEDURAL HISTORY

Plaintiff filed an application for Supplemental Security Income ("SSI") on June 19, 2008, alleging disability beginning February 21, 2008.  (Tr. 84-89, 105).  Plaintiff's

---

[1]    Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013.  Pursuant to Rule 25(d), Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as the defendant in this suit.  No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2]    The parties consented to the exercise of jurisdiction by a United States Magistrate Judge.  (Doc. 14).

application was denied initially and on reconsideration.  Following the denial of his

claim, Plaintiff requested and received a hearing before an Administrative Law Judge

("ALJ") which was held on February 10, 2010.[3]  (Tr. 495-566).  The ALJ issued a

decision on March 5, 2010, finding Plaintiff not disabled.  (Tr. 17-28).  The Appeals

Council denied review of this decision on October 19, 2011.  (Tr. 6-9).  Accordingly, this

case is now ripe for review under § 1631(c)(3) of the Social Security Act, 42 U.S.C.

§1383(c)(3).

## II.   NATURE OF DISABILITY CLAIM

### A.   <u>Summary of Evidence Before the ALJ</u>

 Plaintiff was 43 years old on the date of the ALJ's decision.  (Tr. 28).  Plaintiff

has a high school education and past relevant work experience as a construction

worker and retail manger.  (Tr. 25).  Plaintiff claims to be disabled since February 21,

2008 due to a broken right leg and trouble walking.  (Tr. 105).  Plaintiff's medical history

is discussed at length in the ALJ's decision and will be summarized herein.

On February 21, 2008, Plaintiff was involved in an automobile accident and was

admitted to Shands Hospital.  (Tr. 149-95).  He was discharged on February 27, 2008

with a diagnoses of open right tib-fib fracture, concussion forehead, right eyebrow

laceration, right nasal bone fracture, left rib fracture, cervical strain, hyperglycemia,

episodes of hypertension, facetarthrosis L5-S1, left forearm laceration, electrolyte

imbalance, and mild anemia.  (<u>Id.</u>).

---

[3]        An Albanian interpreter was used during the hearing.  <u>See</u> (Tr. 495-566).

Hospital follow up care was provided by Dr. Paul Gladden, M.D. (Tr. 196, 291-92). In April 2008, Dr. Gladden noted pain at the fracture site and chest pain with inspiration. (Tr. 291-92). On June 9, 2008, Dr. Gladden completed a disability statement and opined that Plaintiff was unable to work from February 21, 2008 through February 21, 2009 and sustained permanent disabilities as a result of the injuries sustained in the automobile accident. (Tr. 196).

In May 2008, Plaintiff was treated by Dr. A. Harris, M.D and reported numbness of the knee, rib pain, and was ambulating with a cane. (Tr. 282-83, 290). Examination revealed elevated blood pressure and swelling of the lower extremity fracture site. Plaintiff was advised to remain out of work for the next three months, and possibly up to twelve months. (Id.). On May 21, 2008, Plaintiff underwent a CT scan of his chest which evidenced multiple pulmonary nodules and mediastinal lymph nodes. (Tr. 286-89). Another CT scan was performed on July 3, 2008, which showed multiple bilateral pulmonary nodules. (Tr. 276-77).

On August 20, 2008, Dr. Gladden diagnosed Plaintiff with status post open right tibia fracture with fluid collection of his mid tibia versus herniation. Plaintiff was advised to continue weight bearing as tolerated and told that he could not return to work until February 2009. (Tr. 263-68, 273). Plaintiff reported consistent pain and swelling in November 2008 and was referred for physical therapy. (Tr. 263-64).

In December 2008, an echocardiogram was performed which evidenced mild left atrial enlargement and mild tricuspid regurgitation and mild pulmonary hypertension. (Tr. 236-37). At that time, Plaintiff complained of continued pain in his neck, back and

-3-

leg with paresthesias and weakness as well as a history of Hepatitis A.  An MRI of the

cervical spine was performed on December 17, 2008, which showed degenerative disc

disease with dorsal disc bulging and marginal spondylosis multilevel.  (Tr. 229).  On

December 31, 2008, an MRI of the lumbar spine showed a mild bulge and a generalized

bulge with minimal frontal narrowing bilaterally at L4-5 as well as facet joint arthrosis at

L5-S1.  (Tr. 228).

     In December 2008, Dr. Gladden treated Plaintiff for right tibia fracture.  (Tr.

255-56).  In January 2009, Plaintiff was diagnosed with multiple pulmonary nodules,

mild pulmonary hypertension, and obstructive sleep apnea.  (Tr. 224-27, 252-54).  On

January 6, 2009, Plaintiff underwent a liver ultrasound which evidenced hepatomegaly

with limited visualization of the liver.  (Id.).

     Between April 2009 through May 2009, Plaintiff was treated by Dr. Harris for

ongoing knee pain.  (Tr. 242-43).  Examination revealed a muscle herniation, decreased

range of motion, and instability.  Plaintiff was advised to undergo surgical hardware

removal and anterior leg fascial repair.  (Id.).

     Post-surgery, Plaintiff began weekly chiropractic care from Dr. G. Carter.  (Tr.

305-14, 316-54).  Dr. Carter opined that Plaintiff was disabled from April 2009 through

April 2010.  (Id.).  Dr. Carter referred Plaintiff to Dr. Pollack and ARNP Snyder for further

treatment.  (Tr. 312, 318, 338-40, 368-93).  On May 15, 2009, ARNP Synder completed

a questionnaire regarding Plaintiff's functioning and opined that he could only stand or

walk "zero" hours and sit only one hour in a normal workday.  (Tr. 420-22).  In addition,

ARNP Snyder opined Plaintiff could lift up to ten pounds occasionally and could not

push or pull repetitively with his hands.  Plaintiff could not use feet for repetitive movements and was unable to bend, squat, crawl or climb.  He could not sustain activity at a pace and with the attention to task as would be required in the competitive work place and he would need to use a hand held assistive device for even occasional walking or standing.  ARNP Synder further opined that Plaintiff would not be able to attend to any employment on an eight hour five day a week basis.  (Id.).

On July 28, 2009, Dr. Pollack opined that Plaintiff was unable to return to work. (Tr. 389).  In August 2009, examination revealed bilateral cervical, thoracic, and lumbar, trapezius muscle tightness and spasm with decreased range of motion.  (Tr. 312). Plaintiff was diagnosed with cervical, thoracic and lumbar myofascial syndrome, left rib contusion and history of pulmonary nodules.  (Id.).

Plaintiff was treated from October 2009 through January 2010 by Dr. T. Rizzo, M.D. and was diagnosed with intractable rib pain, right knee pain, and low back pain. (Tr. 436-47, 440-62).  Plaintiff was prescribed a thoraco-lumbo sacralorthosis brace with shoulder straps for chest wall pain and rib pain, permanently.  (Tr. 447).  At the request of Dr. Rizzo, Dr. Broderson, an orthopedist, examined Plaintiff.  (Tr. 438-39).  X-rays showed minimal degenerative changes of the knee and an MRI showed soft tissue scarring in the fat-pad around the patella.  Plaintiff was referred for physical therapy, a TENS unit, and a pain clinic for nerve blocks.  (Id.).

## B.   Medical Evidence Submitted to the Appeals Council

Additional records dated one month prior to the ALJ's decision were submitted to the Appeals Council.  These records included progress notes from Dr. Rizzo and a

Functional Assessment Form completed by Dr. Rizzo.  (Tr. 490-94).  Dr. Rizzo's

progress notes referenced pain treatment and referral to Dr. Odell for a surgical

consultation.  (Tr. 490-94).  In the Functional Assessment Form, Dr. Rizzo opined that

Plaintiff could only stand or walk for two hours and sit for six hours out of an eight hour

day.  (Tr. 490-92).  He could not lift any weight and was unable to use his hands for

repetitive pushing and pulling.  He could not use his feet for repetitive movements as in

operating foot controls and was unable to bend, squat, crawl, or climb at all.  He was

unable to reach above shoulder level and could not sustain activity at a pace and with

the attention to task as would be required in the competitive work place.  In addition, Dr.

Rizzo opined that Plaintiff's condition required the use of an assistive device for even

occasional walking and he could not attend any employment on an eight hour, five day

a week basis.  (Id.).

> C.   **Summary of the ALJ's Decision**

A plaintiff is entitled to disability benefits when he is unable to engage in

substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to either result in death or last for a continuous

period of not less than 12 months.  42 U.S.C. §§ 416(I), 423(d)(1)(A); 20 C.F.R. §

404.1505.  The ALJ must follow five steps in evaluating a claim of disability.  See 20

C.F.R. § 416.920.  First, if a claimant is working at a substantial gainful activity, he is not

disabled.  20 C.F.R. § 416.920(a)(2)(I).  Second, if a claimant does not have any

impairment or combination of impairments which significantly limit his physical or mental

ability to do basic work activities, then he does not have a severe impairment and is not

disabled.  20 C.F.R. § 416.920(a)(2)(ii).  Third, if a claimant's impairments meet or equal

an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled.  20

C.F.R. § 416.920(a)(2)(iii).  Fourth, if a claimant's impairments do not prevent him from

doing past relevant work, he is not disabled.  20 C.F.R. § 416.920(a)(2)(iv).  Fifth, if a

claimant's impairments (considering his residual functional capacity, age, education,

and past work) prevent him from doing other work that exists in the national economy,

then he is disabled.  20 C.F.R. § 416.920(a)(2)(v).  Plaintiff bears the burden of

persuasion through step four, while at step five, the burden shifts to the Commissioner.

Bowen v. Yuckert, 482 U.S. 137, 146, 107 S.Ct. 2287 n.5 (1987).

        In the instant case, at step one, the ALJ found Plaintiff had not engaged in

substantial gainful activity since his alleged onset date.  At step two, the ALJ found

Plaintiff had the following severe impairments: status-post right tibia fracture with

intramedullary rod placement and removal and herniated muscle repair secondary to a

February 2008 motor vehicle accident; degenerative disc disease of the cervical and

lumbosacral spines; mild degenerative joint disease of the right knee with soft tissue

injury, secondary to a March 2009 motor vehicle accident; and obesity.  (Tr. 19).  At

step three, the ALJ determined Plaintiff did not have an impairment, or any combination

thereof, which met or equaled any of the impairments listed in Appendix 1, Subpart P of

Regulation No. 4.  The ALJ further determined Plaintiff had the residual functional

capacity ("RFC")[4] to perform a range of light work[5] that allowed for the ability to sit for

---

        [4]        The residual functional capacity is the most an individual can do despite the
combined effect of all of their credible limitations.  20 C.F.R. § 416.945.  The residual functional
                                                                              (continued...)

six hours in an eight hour work day; stand and walk for six hours in an eight hour

workday; lift/carry 20 pounds occasionally and 10 pounds or less more frequently;

push/pull limited occasionally with the lower extremities; climb ramps and stairs, bend,

stoop, crouch and crawl frequently and kneel occasionally; never climb ladders, ropes

or scaffolds and no exposure to environments with concentrated vibration.  (Tr. 20).

At the hearing, the ALJ utilized the testimony of a Vocational Expert ("VE").

Based on the VE's testimony, the ALJ found Plaintiff was able to perform her past

relevant work as a retail manager.  (Tr. 25).  In addition, the ALJ made the alternate

finding that Plaintiff could also perform a significant number of other jobs that exist in the

national economy, including work as an assembler, cleaner/housekeeper, and office

helper.  (Tr. 26-27, 549-51).  Therefore, the ALJ found Plaintiff was not under a

"disability," as defined in the Social Security Act.  (Tr. 27).

## III.   ANALYSIS

### A.   The Standard of Review

The scope of this Court's review is limited to determining whether the ALJ

applied the correct legal standards, <u>McRoberts v. Bowen</u>, 841 F.2d 1077, 1080 (11th

---

[4](...continued)
capacity is based on all of the relevant evidence in the case record, and is assessed at step four
of the sequential evaluation.  <u>Id.</u>

[5]      "Light work involves lifting no more than 20 pounds at a time with frequent lifting or
carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job
is in this category when it requires a good deal of walking or standing, or when it involves sitting
most of the time with some pushing and pulling of arm or leg controls. To be considered capable
of performing a full or wide range of light work, you must have the ability to do substantially all of
these activities. If someone can do light work, we determine that he or she can also do sedentary
work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for
long periods of time."  20 CFR § 416.967(b).

Cir. 1988), and whether the findings are supported by substantial evidence.  Richardson

v. Perales, 402 U.S. 389, 390, 91 S.Ct. 1420 (1971).  The Commissioner's findings of

fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla – i.e., the evidence must do more than

merely create a suspicion of the existence of a fact, and must include such relevant

evidence as a reasonable person would accept as adequate to support the conclusion.

Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672

F.2d 835, 838 (11th Cir. 1982) and Richardson, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the

district court will affirm, even if the reviewer would have reached a contrary result as

finder of fact, and even if the reviewer finds that the evidence preponderates against the

Commissioner's decision.  Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991);

Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).  The district court must view

the evidence as a whole, taking into account evidence favorable as well as unfavorable

to the decision.  Foote, 67 F.3d at 1560; accord, Lowery v. Sullivan, 979 F.2d 835, 837

(11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of

factual findings).

### B.    Issues on Appeal

Plaintiff raises two issues on appeal.  First, Plaintiff argues that the ALJ failed

to properly consider his subjective complaints.  In making this argument, Plaintiff

contends that the ALJ improperly discounted his treating and examining sources while

relying on the opinions of non-examining sources.  (Doc. 16, pp. 11-21).  Second,

Plaintiff asserts that the Appeals Council erred in failing to properly consider the evidence submitted after the ALJ's decision.  (Id. at pp. 21-25).  The Court will address each of these issues.

> **1.    Whether the ALJ properly considered Plaintiff's subjective complaints and properly considered the opinions of the medical sources of record.**

First, Plaintiff argues that the ALJ failed to properly evaluate his subjective complaints of pain and limitations.  (Doc. 16, pp. 11-21).  The standard for evaluating subjective complaints requires the following:

> (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain/limitations arising from that condition or (3) that the objectively determined medical condition is of such severity that it can reasonably be expected to give rise to the alleged pain/limitations.

Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (quoting Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991)).  A claimant's statements about pain or other symptoms will not alone establish disability.  See 20 C.F.R. § 416.929(a).  Rather, medical signs and laboratory findings must be present showing a medical impairment(s) that could reasonably be expected to produce the symptom(s) alleged.  Id.; see also Edwards v. Sullivan, 937 F.2d 580, 584 (11th Cir. 1991).  When an impairment that could reasonably be expected to produce the symptoms alleged has been shown, the intensity and persistence of the symptoms, such as pain, will be evaluated based on all the evidence.  See 20 C.F.R. § 416.929(c).  The district court reviews the ALJ's credibility determination to determine whether, as a whole, it is supported by substantial evidence of record.  Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005).  Though

the ALJ's credibility determination cannot be so broad to prevent subsequent review, the ALJ need not cite to particular phrases or formulations in making his credibility determination.  Id. at 1210.  The nature of a claimant's symptoms, the effectiveness of medication, the claimant's activities, and other factors are relevant in the consideration of subjective symptoms such as pain.  See 20 C.F.R. § 416.929(c)(3).

Here, the ALJ found that the record included evidence which confirmed the presence of several severe impairments.  However, the ALJ found that Plaintiff's testimony was credible only to the extent that the alleged symptoms prevented him from performing work beyond his RFC.  In discrediting Plaintiff's subjective complaints, the ALJ credited the opinions of two non-examining physicians over the opinions of multiple treating and examining sources.

When considering a treating physician's testimony, the ALJ must ordinarily give substantial or considerable weight to such testimony unless good cause is shown to the contrary.  Phillips v. Barnhart, 357 F.3d 1232, 1240 (11th Cir. 2004); Lewis v. Callahan, 125 F.3d 1436,1440 (11th Cir. 1997); MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986); see also 20 C.F.R. § 416.927(d)(2).  Such a preference is given to treating sources because such sources are likely to be best situated to provide a detailed and longitudinal picture of the medical impairments.  Lewis, 125 F.3d at 1440.  Furthermore, the ALJ must specify the weight given to the treating physician's opinion or reasons for giving the opinion no weight, and the failure to do so is reversible error.  MacGregor, 786 F.2d at 1053.  Good cause for rejecting a treating source's opinion may be found where the treating source's opinion was not bolstered by the evidence, the evidence

supported a contrary finding, or the treating source's opinion was conclusory or inconsistent with his or her own medical record.  Phillips, 357 F.3d at 1240-41 (citing Lewis, 125 F.3d at 1440); Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987). Where the Commissioner has ignored or failed properly to refute the treating physician's testimony, such testimony, as a matter of law, must be accepted as true.  MacGregor, 786 F.2d at 1053.

Here, the Court agrees with Plaintiff's contention that the ALJ failed to properly assess the opinions of his treating physicians.  Indeed, the ALJ failed to offer any support for his opinion that the non-examining sources who reviewed the record were better qualified to give an opinion on Plaintiff's condition than his treating specialists. See Lamb v. Bowen, 847 F.2d 698, 703 (11th Cir. 1988); Sharfarz v. Bowen, 825 F.2d 278, 280 (11th Cir. 1987) ("The opinions of nonexamining, reviewing physicians…when contrary to those of examining physicians are entitled to little weight in a disability case"); Johnson v. Barnhart, 138 Fed. Appx. 266, 271 (11th Cir. 2005) (conclusions from non-examining physicians are "not dispositive"); Kemp v. Astrue, 308 Fed. Appx. 423, 427 (11th Cir. 2009) (ALJ may rely on non-examining physician only when supported by other evidence).

As thoroughly addressed in the Summary of the Evidence, Drs. Gladden and Pollack both issued opinions that Plaintiff was more limited than determined by the ALJ. Although their opinions may not be highly detailed, because they were treating physicians, the ALJ should not have summarily discredited their opinions.  Even if a treating physician's opinion pertains to an issue reserved to the Commissioner (e.g. a

statement that the claimant is unable to work or is disabled), the ALJ must still "carefully consider" and "never ignore" these opinions.  See SSR 96-5p.  As specifically explained in SSR 96-5p, for treating sources, the rules require that "the ALJ make every reasonable effort to recontact such sources for clarification when they provide opinions on issues reserved to the Commissioner and the bases for such opinions are not clear to us."  If the case record contains an opinion from a medical source on an issue reserved to the Commissioner, the ALJ must evaluate all the evidence in the case record to determine the extent to which the opinion is supported by the record.

In addition, Dr. Carter and ARNP Snyder also issued opinions that Plaintiff was more limited than determined by the ALJ.  Although these two providers are not considered acceptable medical sources under the regulations, "[o]pinions from these medical sources, who are not technically deemed 'acceptable medical sources' under our rules, are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file."  SSR 06-03p.  Moreover, the Ruling provides that among the factors to consider when evaluating the opinions of "other sources" are the length of time and frequency of treatment, consistency with other evidence, the degree to which the source presents relevant evidence to support the opinion, how well the opinion is explained, and whether the source has a special expertise.  The Ruling further states that it may be appropriate to give more weight to the opinion of an "other source" medical source than to an "acceptable medical source" if the medical source has seen the claimant more often and has provided better supporting evidence.  SSR 06-03p.

In making his RFC determination, the ALJ relied on the opinions of two non-examining physicians and a progress note that stated Plaintiff could do "light duty." (Tr. 205). It is unclear whether a physician even signed the progress note and there is no evidence that this meant that Plaintiff could perform the exertional requirements of "light work" as defined by the regulations. As for the state agency opinions, only one of the opinions was actually rendered by an acceptable medical source. See (Tr. 197); see also Siverio v. Comm'r of Soc. Sec., 2012 WL 573588, at *2 (11th Cir. Feb. 23, 2012) ("In Florida, a [single decision maker] is assigned to make the initial disability determination after 'appropriate consultation with a medical or psychological consultant.'"); Tabb v. Astrue, 2012 WL 206155, at *4 (S.D. Ala. Jan.24, 2012) (noting that "[a]n [single decision maker]'s assessment is not opinion evidence that an ALJ may rely upon in reaching a disability determination"); Robertson v. Astrue, 2011 WL 6151548, at *2 n. 2 (S.D. Ala. Dec. 12, 2011) (observing that a [single decision maker] is not an acceptable medical source and the opinion of a [single decision maker] "is not evidence that the ALJ may properly rely upon"); Bolton v. Astrue, 2008 WL 2038513, at *4 (M.D. Fla. May 12, 2008) (recognizing that a [single decision maker] is not a medical professional and that a finding from a [single decision maker] is not entitled to any weight as a medical opinion).

The Eleventh Circuit has repeatedly held that the opinion of a reviewing, non-examining physician cannot constitute substantial weight to support an administrative decision. See Lamb v.Bowen, 847 F.2d 698, 703 (11th Cir. 1988) ("The reports of reviewing one examining physicians do not constitute substantial evidence on

which to base an administrative decision."); see also Swindle v. Sullivan, 914 F.2d 222, 226 n.3 (11th Cir. 1990) (stating that the opinion of a non-examining reviewing physician is entitled to little weight and, taken alone, does not constitute substantial evidence to support an administrative decision).  Due to the ALJ's improper reliance on the opinions of non-examining physicians and his failure to properly consider and/or discuss the treating opinions of record, reversal is warranted so that the ALJ can properly evaluate of the medical evidence in this case.

### 2.   Whether the Appeals Council properly considered the new evidence submitted after the ALJ's decision.

Plaintiff argues the Appeals Counsel erred in its consideration of the additional evidence submitted after the ALJ's decision.  (Doc. 16, pp. 21-25).  According to Ingram v. Comm'r of Soc. Sec. Admin., when a Plaintiff submits additional evidence to the AC and argues to the court that the AC erred in denying review, a district court must determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole.  496 F.3d 1253, 1262, 1266 (11th Cir. 2007).

Here, as discussed above, the ALJ's decision is not supported by substantial evidence because he failed to properly consider Plaintiff's credibility and the opinions of his treating sources.  Because the Court is remanding the case for the ALJ to re-evaluate these issues, it will direct the ALJ to consider the additional evidence presented to the AC while on remand.

## IV.   CONCLUSION

For the reasons stated herein, the Clerk of the Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g) **REVERSING** the

Commissioner's decision and **REMANDING** the matter to the ALJ with instructions to: (1) re-evaluate Plaintiff's credibility and the medical opinions of record; (2) consider the additional evidence presented to the AC; and (3) conduct any other proceedings deemed appropriate. The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

Should this remand result in the award of benefits, Plaintiff's attorney is hereby granted, pursuant to Rule 54(d)(2)(B), an extension of time in which to file a petition for authorization of attorney's fees under 42 U.S.C. § 406(b), until thirty (30) days after the receipt of a notice of award of benefits from the Social Security Administration. **However, this order does not extend the time limits for filing a motion for attorney's fees under the Equal Access to Justice Act.**

**DONE AND ORDERED** in Chambers in Jacksonville, Florida this  6th  day of March, 2013.

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record